# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| THE ESTATE OF BUNNIE DAVIS, SR., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 2:15-cv-00329-JEO |
| WELLS FARGO HOME MORTGAGE, INC., | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

In this action, the Estate of Bunnie Davis, Sr. (the "Plaintiff") has alleged a variety of state law claims against Wells Fargo Home Mortgage, Inc.[1] ("Wells Fargo"), all related to Wells Fargo's foreclosure of a mortgage that secured a loan obtained by Bunnie Davis, Sr. prior to his death. (Doc. 1). Wells Fargo has moved the court to enter a judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Doc. 16). For the reasons discussed below, Wells Fargo's motion is due to be granted.

### I.    STANDARD OF REVIEW

"Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the

---

[1] Wells Fargo Home Mortgage, Inc. is a division of Wells Fargo Bank, N.A. (Doc. 8 at 1, n. 1).

pleadings and any judicially noticed facts." *Cunningham v. Dist. Attorney's Office for Escambia County*, 592 F.3d 1237, 1255 (11th Cir. 2010). The court "must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." *Id.* In ruling on a Rule 12(c) motion, the court may consider a document attached to the motion without converting the motion into one for summary judgment, provided that the document is "(1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

## II.   FACTS AND PROCEDURAL HISTORY

In 1998, Bunnie Davis, Sr. ("Mr. Davis") obtained a loan from First Union Home Equity Bank, N.A. The loan was evidenced by a promissory note and secured by a mortgage on property located at 932 25th Street Southwest in Birmingham, Alabama (the "Property"). The terms of the note required Mr. Davis to make monthly payments of principal and interest. Wells Fargo serviced the loan.[2] (Doc. 1 ¶¶ 4-6; Doc. 8 ¶¶ 5-6).

---

[2] The complaint alleges that Mr. Davis obtained the loan in 1993, that the principal amount of the loan was $30,400.00, and that the amount of the monthly payment was $525.86. (Doc. 1 at ¶¶ 5-6). However, the note and mortgage reflect that the loan was obtained in 1998 in the principal amount of $34,300.00 and that the amount of the monthly payment was $416.85. (Doc. 16-1 at 1-10). Although the Plaintiff did not attach copies of the note and mortgage to the complaint, copies were attached as exhibits to Wells Fargo's Rule 12(c) motion. (*Id.*) Because the note and mortgage are central to the complaint and the Plaintiff has not disputed the authenticity of the copies attached to Wells Fargo's Rule 12(c) motion, the court may consider the documents without converting the motion into one for summary judgment. *Feldt*, 304 F.3d at 1134. Moreover, the date of the note and mortgage, the amount of the note, and the amount of the

2

On March 27, 2014, Mr. Davis died.  (Doc. 1 ¶ 9).  Although it is not clear from the complaint, it appears that no payments were made on Mr. Davis's loan following his death.³

In his will, Mr. Davis named his wife, Robin Davis ("Mrs. Davis"), executor and beneficiary of his estate.  Mrs. Davis contacted Wells Fargo following Mr. Davis's death, informed Wells Fargo that her husband had died and that she had been named executor of his estate, and asked how she was to proceed while the estate was being probated.  According to Mrs. Davis, she was told that she should keep Wells Fargo informed of the status of the probate proceedings and that Wells Fargo would not take any action to foreclose on or sell the Property until she had received her letters testamentary from the probate court.⁴  (Doc. 1 ¶¶ 10-12; Doc. 18 at 2-3).

Over the next several months, Mrs. Davis kept Wells Fargo advised of the status of the probate process.  Nonetheless, Wells Fargo foreclosed on the Property

---

monthly payment under the note are not material to the resolution of Wells Fargo's Rule 12(c) motion.

³ Attached as an exhibit to the Plaintiff's response to Wells Fargo's Rule 12(c) motion is a billing statement from Wells Fargo dated December 9, 2014, and addressed to Mr. Davis.  (Doc. 18-1).  The statement reflects overdue payments from May 24, 2014 through November 24, 2014.  (*Id.*)

⁴ The allegation that Wells Fargo told Mrs. Davis that it would not foreclose on or sell the Property until she had received her letters testamentary is not stated in the complaint, but rather in the Plaintiff's response to Wells Fargo's Rule 12(c) motion.  However, the allegation can certainly be inferred from the claims and other allegations in the complaint.  In any event, Wells Fargo has accepted the facts alleged in the Plaintiff's pleadings as true for purposes of its Rule 12(c) motion. (Doc. 19 at 1, n.1).

3

on December 10, 2014, even though the estate had not been probated and Mrs. Davis had not received her letters testamentary. She was granted the letters testamentary the following day, December 11, 2014. (Doc. 1 ¶¶ 14- 17).

On February 23, 2015, the Estate of Bunnie Davis, Sr. filed this action against Wells Fargo, alleging claims for breach of contract (Count One), slander of title (Count Two), wrongful foreclosure (Count Three), unjust enrichment (Count Four), and fraud (Count Five).[5] (Doc. 1). Specifically, the complaint alleges that Wells Fargo breached the terms of Mr. Davis's mortgage, slandered the title to the Property, wrongfully foreclosed on the Property without notifying Mrs. Davis of its intent to do so, was unjustly enriched from the sale of the Property, and concealed its intent to foreclose on the Property.

Wells Fargo answered the complaint and then filed the pending motion for judgment on the pleadings pursuant to Rule 12(c). (Doc. 16). In its motion, Wells Fargo argues, in part, that the tort claims are due to be dismissed because they did

---

[5] The complaint identifies the "Plaintiff" as "The Estate of Bunnie Davis, Sr., resident of Jefferson County, Alabama until his death." (Doc. 1 ¶ 3). However, the complaint also uses the term "Plaintiff" when referring to Mr. Davis himself. (*See* Doc. 1 at ¶¶ 5-11). To complicate matters even further, "Plaintiff's" response to Wells Fargo's Rule 12(c) motion refers to "Mrs. Davis's" claims against Wells Fargo, which would seem to indicate that the Plaintiff is Mrs. Davis. (*See* Doc. 18 at 2-4). Notwithstanding these inconsistencies, it is clear that (1) Mr. Davis is not the Plaintiff because he is deceased, and (2) Mrs. Davis is not the Plaintiff because she has not asserted any claims in her individual capacity. The complaint was filed by the Estate of Bunnie Davis, Sr., which means that the Estate of Bunnie Davis, Sr. is the Plaintiff and that Mrs. Davis is a party to this action only in her capacity as the personal representative of the estate. The court also notes that, even if Mrs. Davis had brought this action in her individual capacity, her claims would still be subject to dismissal for the reasons discussed below.

not survive Mr. Davis's death, and that the breach of contract claim is due to be dismissed because Mrs. Davis was not a party to the mortgage and was not the executor of her husband's estate at the time the mortgage was allegedly breached.

The Plaintiff responded to Wells Fargo's Rule 12(c) motion. (Doc. 18). In the response, the Plaintiff clarifies that the tort claims against Wells Fargo "aren't brought on a claim of wrongdoing against the deceased. Instead they are brought on a claim of wrongdoing against the heirs and/or the current owners of the [P]roperty." (*Id.* at 2). The Plaintiff also clarifies that the "contract" that Wells Fargo allegedly breached is not "within the mortgage" but rather is an "implied contract" with Mrs. Davis based on Wells Fargo's promise not to foreclose on the Property until Mr. Davis's estate was probated. (*Id.* at 2-3). With these clarifications, the Plaintiff argues that "Mrs. Davis's" unjust enrichment claim is sufficiently alleged to survive Wells Fargo's motion, as is "Mrs. Davis's" fraud claim. (*Id.* at 3) The Plaintiff does not address the slander of title and wrongful foreclosure claims.

Wells Fargo then filed a reply. (Doc. 19). In addition to arguing that the claims as stated in the complaint are all due to be dismissed for the reasons discussed in its Rule 12(c) motion, Wells Fargo argues that the claims as stated in the Plaintiff's response are due to be dismissed because Mrs. Davis is not a party to

5

this action and the claims are all based on an alleged oral agreement that is barred by the statute of frauds.

### III.   ANALYSIS

**A.   Slander of Title and Wrongful Foreclosure**

As noted above, the Plaintiff's response to Wells Fargo's motion for judgment on the pleadings does not address or even mention the slander of title and wrongful foreclosure claims alleged in the complaint.  Consequently, the Plaintiff has effectively abandoned those claims and they are subject to dismissal.  *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta,* 219 F.3d 1301, 1326 (11th Cir. 2000) ("[F]ailure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *McMaster v. United States,* 177 F.3d 936, 940–41 (11th Cir. 1999) (noting that a claim may be considered abandoned when the allegation is included in the plaintiff's complaint but he fails to present any argument concerning the claim to the district court).

Additionally, even if the slander of title and wrongful foreclosure claims had not been abandoned, the claims would still be subject to dismissal.  Under Alabama law, a slander of title claim has six elements: "(1) [o]wnership of the property by plaintiff; (2) falsity of the words published; (3) malice of the defendant in publishing the false statements; (4) publication to some person other than the

owner; (5) the publication must be in disparagement of plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication (setting them out in detail)." *Merchants Nat. Bank of Mobile v. Steiner*, 404 So. 2d 14, 21 (Ala. 1981) (quoting *Womack v. McDonald*, 121 So. 57, 59 (Ala. 1929)). Here, the complaint merely alleges that Wells Fargo's conduct "has caused a cloud to be placed on the title of the Plaintiff's property" and that Wells Fargo's "slandering of the Plaintiff's title was the proximate cause of injuries and damages." (Doc. 1 ¶¶ 26-27). Other than alleging ownership of the Property, the Plaintiff has alleged none of the facts necessary to support a slander of title claim, including the publication of false words by Wells Fargo, malice on the part of Wells Fargo, publication to someone other than the Plaintiff, and special damages suffered by the Plaintiff. The slander of title claim fails as a matter of law.

Likewise, under Alabama law a claim for wrongful foreclosure arises "whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." *Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. & Loan. Ass'n,* 607 So.2d 180, 182 (Ala. 1992). Here, there is no allegation anywhere in the complaint that Wells Fargo foreclosed on and sold the Property for any purpose other than to secure Mr. Davis's overdue

debt. Like the slander of title claim, the wrongful foreclosure claim fails as a matter of law.

## B.     Breach of Contract

The complaint alleges that Wells Fargo "breached the terms of the mortgage agreement" between Mr. Davis and Wells Fargo. (Doc. 1 ¶¶ 20-23). However, as noted above, the Plaintiff has now clarified that the "contract" that Wells Fargo allegedly breached is not "within the mortgage" but rather is an "implied contract" arising out of the alleged promise Wells Fargo made to Mrs. Davis that it would not foreclose on the Property until Mr. Davis's estate was probated. (Doc. 19 at 2-3). Indeed, the Plaintiff affirmatively states: "Mrs. Davis's claim is not that the express contract [(the mortgage agreement)] was breached [but] that the implied contract was breached." (*Id.* at 3). Accordingly, to the extent that the complaint alleges a claim for breach of Mr. Davis's mortgage, the claim has been abandoned and is due to be dismissed.

That leaves the Plaintiff's claim for breach of the alleged "implied contract" between Mrs. Davis and Wells Fargo. Putting aside the fact that this claim is not pleaded anywhere in the complaint, the claim fails for at least three reasons. First, Mrs. Davis is not a party to this action in her individual capacity. To the extent she is a party, it is only in her capacity as the personal representative of her husband's

estate, and it is undisputed that she did not have such capacity at the time the alleged implied contract was created.

Second, "an implied contract must contain all of the essential elements of an express contract. … The elements of a contract are: (1) agreement; (2) consideration; (3) two or more contracting parties; (4) legal object; and (5) capacity." *Freeman v. First State Bank of Albertville*, 401 So. 2d 11, 13 (Ala. 1981). Here, even assuming that Wells Fargo and Mrs. Davis reached an agreement that Wells Fargo would not take any foreclosure action until Mr. Davis's estate was probated, the Plaintiff has not shown any consideration flowing to Wells Fargo. In the absence of any consideration passing from Mrs. Davis to Wells Fargo in exchange for Wells Fargo's agreement to postpone foreclosure, no implied contract was created.

Third, even if an implied contract existed, it would be barred by Alabama's Statute of Frauds. The Plaintiff admits that Wells Fargo's alleged promise not to foreclose on the Property until the estate was probated was "never properly produced in writing." (Doc. 18 at 2). Alabama's Statute of Frauds provides that the following agreements, among others, are void unless in writing: "Every agreement or commitment to lend money, delay or forebear payment thereof or to modify the provision of such an agreement except for consumer loans with a principal amount financed of less than $25,000." ALA. CODE § 8-8-2(7). A

promise to postpone foreclosure proceedings is subject to the Statute of Frauds and must be in writing to be enforceable. *See Coleman v. BAC Servicing*, 104 So. 3d 195, 207 (Ala. Civ. App. 2012) (holding that the Statute of Frauds barred an alleged oral agreement that "foreclosure would not go forward" as long as the plaintiff was participating in a loss-mitigation program); *Perry v. Fed. Nat. Mortg. Ass'n*, 100 So. 3d 1090, 1099-1100 (Ala. Civ. App. 2012) (following *Coleman*). Because Wells Fargo's alleged agreement to postpone foreclosure was not in writing, it is void and unenforceable under the Statute of Frauds.

**C.     Unjust Enrichment and Fraud**

According to the Plaintiff's response to Wells Fargo's motion for judgment on the pleadings, the Plaintiff's unjust enrichment and fraud claims are both premised on Wells Fargo's alleged oral promise not to foreclose on the Property until Mr. Davis's estate was probated. With respect to unjust enrichment, the Plaintiff asserts that Wells Fargo's "failure to honor the commitment not to sell the [P]roperty allowed [Wells Fargo] to profit from the sale and [it was] unjustly enriched to the detriment of Mrs. Davis." (Doc. 18 at 3). With respect to fraud, the Plaintiff avers that a Wells Fargo representative falsely represented to Mrs. Davis that "the bank would hold off on any action until she received the letters of testamentary." (*Id.*) The Plaintiff claims that Mrs. Davis "relied on" Wells Fargo's promise and "suffered damages" as a result. (*Id.*)

Because Wells Fargo's alleged oral promise to postpone foreclosure is barred by the Statute of Frauds, the Plaintiff's unjust enrichment and fraud claims, which are based on that same oral promise, are likewise barred.[6] *See Coleman*, 104 So. 3d at 207 (noting that "when a tort claim turns on an alleged agreement that is unenforceable under the Statute of Frauds, the Statute of Frauds also bars proof of that agreement to support a tort claim"); *see also Branch Banking & Trust Co. v. Nichols*, 2015 WL 187766, *9 (Ala. Apr. 24, 2015) (holding that the plaintiffs' tort claims, including claims for fraud and unjust enrichment, failed as a matter of law because they turned on the existence of an alleged oral agreement that was invalid under the Statute of Frauds). The Plaintiff cannot pursue tort claims that turn on proof of an alleged oral promise that is invalid under the Statute of Frauds.[7]

## V. CONCLUSION

For the foregoing reasons, Wells Fargo's motion for judgment on the pleadings (doc. 16) is due to be granted and this action is due to be dismissed. An order consistent with this opinion will be entered.

---

[6] The court also notes, again, that Wells Fargo's alleged oral promise was allegedly made to Mrs. Davis, who was not the representative of her husband's estate at the time the promise was allegedly made and is not a party to this action in her individual capacity.

[7] In the Plaintiff's response to Wells Fargo's Rule 12(c) motion, the Plaintiff requests leave to amend her fraud claim in the event the court finds that the claim is not pleaded with sufficient specificity. (Doc. 18 at 4). The Plaintiff's request is denied. The court has dismissed the fraud claim based on the Statute of Frauds, which is a legal and substantive issue that cannot be corrected by repleading the claim.

**DONE**, this the 2nd day of February, 2016.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge